SANDERS ET AL., EXR'S, *vs.* CABANISS ET AL., EXR'S.

[BILL IN EQUITY TO ASCERTAIN AMOUNT DUE BY LEGATEE ON NOTES GIVEN ON CONDITIONS OF ITEM 28 OF THE DECEDENT'S WILL, AND TO DECLARE SAME A LIEN ON CERTAIN LANDS.]

*Legacy construed.*—A testator bequeathed to his nephew land and slaves worth about $50,000, on condition that the use of them was to be his compensation as executor of the will, or if he failed to execute it, he was to pay his successor not exceeding $2,000 a year, to be secured by lien on the property. He was also to pay to the estate of the testator (to constitute part of a residuary fund,) $20,000. If he refused to accept the property on these terms, or having accepted it, failed to execute the will, or to pay his successor the compensation required, whatever payments had been made on the $20,000 were to be refunded with interest, the property was to be surrendered with the rents and profits, and he was to be paid for any services rendered as executor. The absolute title to the property was not to vest in him until after the final settlement of the estate. The legatee, in 1860, shortly after the death of the testator, accepted the property on the terms, gave a lien on it for the compensation of his successor, if one should be needed, and executed five bonds, payable in annual installments, secured by lien on the property, for the payment of the $20,000. He died in 1861, the slaves were emancipated in 1865, and the estate is not yet finally settled. *Construed* as follows :

1. The right to the use of the property vested in the legatee from the time he received possession of it.
2. The obligation to execute the will of the testator, or to pay the compensation of his successor, was not affected by the emancipation of the slaves before the final settlement.
3. The legacy intended to be given was the value of the property, less $20,000.
4. As the absolute title was not to vest in the legatee until after the final settlement of the estate, the value of the slaves at the time they were received must be set off against the $20,000. If it equals or exceeds that sum, the bonds must be cancelled. If it is less, they must be paid to the extent of the diminution.

APPEAL from Chancery Court of Madison.
Heard before Hon. WM. SKINNER.

THIS was a bill in equity exhibited by the appellees, Septimus D. Cabaniss and Charles P. Cabaniss, as executors

of the last will and testament of Samuel Townsend, deceased, against Wm. W. Sanders and Virginia Markham, as executor and executrix of the last will and testament of Samuel C. Townsend, deceased, and sought an account of the amount due on five several promissory notes, made by Samuel C. Townsend in favor of the estate of Samuel Townsend, and also to declare the amount thus found due, a lien on certain lands described in the bill, which had come into possession of Samuel C. Townsend by virtue of a legacy given him by item 28 of the will of appellees' testator, and to sell said lands for the payment thereof.  The main point in the case grows out of the construction of item 28 of the will of Samuel Townsend, and that item of the will and the other facts of the case are so fully noticed in the opinion as to make it unnecessary to repeat them here.

The cause was submitted on bill, answer, pleas of the pendency of another bill in relation to the same subject matter in this chancery court, and exhibits, and at the December term, 1866, it was referred to the register to ascertain and report whether the suit mentioned in the plea of appellants was in relation to the same matter as that embraced in the present suit.  The register reported in favor of the right to maintain the present suit, for reasons unnecessary to be here noticed, and that the sum of $24,912 12 was due on said notes.

Afterwards, the court confirmed the register's report, and decreed the notes mentioned a lien on the land, &c.

The executor and executrix of Samuel C. Townsend now appeal, and assign for error, among other things, the over-ruling of their exceptions to the register's report, and the decree of the chancellor.

BEIRNE & GORDON, for appellants.
ROBINSON & WALKER, and WALKER & BRICKELL, contra.

[The Reporter, after diligent search, has been unable to obtain the briefs in this case.]

B. F. SAFFOLD, J.—In this case, the bill was filed by the appellee, against the appellants, to ascertain the

amounts due on five several bonds for four thousand dollars each, dated February 28th, 1860, and payable, the first one day after date, with interest from January 25th, 1859, the second one day after date, with interest from January 25th, 1860, the third January 25th, 1861, the fourth January 25th, 1862, and the fifth January 25th, 1863, made by Samuel C. Townsend in favor of the estate of Samuel Townsend ; and to subject certain lands specified to the payment thereof.

The cause of action arose out of a devise and bequest in the will of Samuel Townsend to Samuel C. Townsend, as follows : " Item 28. Because of my affection for my nephew, Samuel C. Townsend, and as a compensation for his services as executor of my will, I wish him to have, upon the terms and conditions hereinafter set forth and expressed, the following part of my property, to-wit : The plantation on which I now reside, containing sixteen hundred or seventeen hundred acres; also my slaves, [here follows the enumeration of them,] being now twenty in number, the possession of said lands and slaves not to be delivered to the said Samuel C. Townsend before the first day of January next after the probate of my will, if proved after the first day of March, nor until he shall secure to my estate (to constitute a part of the residuary trust fund) the payment of twenty thousand dollars in five equal annual instalments, without interest ; and since it is my intention that if said Samuel shall qualify as executor of my will, he shall be compensated for his services in the use of said property, my will is that the absolute title thereto shall not vest in him until the final settlement and distribution of my estate ; and if Samuel fails to qualify as executor, or after qualifying, shall from any cause cease to be the executor of my will before it is fully executed, the said Samuel, or his legal representatives, must secure to my estate by a lien thereon, or a sufficiency thereof, the payment of such annual sum or sums, not exceeding two thousand dollars for any one year, to be paid to or received by the substitute or successor of said Samuel in the said office of executor, as compensation for his services as such executor, such salary or compensation to be fixed as to amount, in such

event, by said Samuel or his legal representative and such substitute or successor, and in case of disagreement, by the other executor of my will, and in default thereof, by the judge of the court before whom such substitute or successor may qualify. And such property must be bound for the compensation, to be paid to any successor of said Samuel in said office. If the said Samuel should refuse to accept said property upon said terms, or should afterward refuse or fail to comply with said terms, it must be sold, and the proceeds of sale go into said residuary trust fund. If at the time of such sale, he shall have made any payments on his bond for said property, or rendered any services as executor, he must be reimbursed such payments with interest, be compensated for his services as executor, and be charged with the value of the rents and profits of said property, and interest thereon. It is, however, my earnest wish that my dear nephew will accept said office as executor, and faithfully discharge the duties thereof until my will is fully executed. It is, moreover, my request, and I confidently expect, that he will keep all the slaves mentioned in this item as intended for him on one of his plantations, unless he may choose to employ the boys that have wives as head men on some of his other plantations ; and that he will annually distribute, out of the profits of the labor of said slaves, one hundred dollars among Ned and his family and children, and the same amount among Edward and his wife and their children."

On the 28th of February, 1860, Samuel C. Townsend executed an instrument in writing, in which it is recited, that the will of Samuel Townsend having been admitted to probate, and he having received from his co-executor the property described in the twenty-eighth item, he makes the five bonds required, and secures their payment by a lien on the property received. He also, in the instrument, creates a lien on the property, to secure the payment of such sums of money as may become payable to his successor in the executorship. He also expressly declares that he claims no other or greater interest in the property than is given to him by the said twenty-eighth item.

Samuel C. Townsend accepted the trust, and continued

in its execution until his death in April, 1861. No portion of the twenty thousand dollars, secured as above stated, has been paid, and there has been no final settlement of the estate of Samuel Townsend.

An analysis of the twenty-eighth item establishes the following propositions : 1. Samuel C. Townsend was to have possession, upon terms with which he complied, of a certain plantation and about twenty slaves. 2. In consideration of the use of this property, he was to execute the will of the testator, or failing from any cause to do so, he was to pay not exceeding two thousand dollars a year to his successor. 3. If he executed the will himself to completion, or failing to do so, he or his representatives paid the amount required to his successor, the property was to be his absolutely. 4. But if he refused to accept the property on the terms prescribed, or accepting, should afterward refuse or fail to comply with the said terms, he was to forfeit the estate. 5. In case of forfeiture, he was to be paid for his services as executor, if he had rendered any, and to be charged with the value of the rents and profits of the property during his use of it; and, in addition, whatever payments he had made on the bonds required of him, were to be refunded, with interest.

As the use of the property was deemed by the testator an equivalent for the services as executor, the effect of the arrangement was, that if Samuel C. refused to accept the property and the trust, or having accepted both, failed to execute the trust, or to pay the price required for the services of his successor, he and the estate were to be even. Nothing was to be due from either to the other, except that the property was to be returned and the bonds delivered up, and such payments as had been made on them refunded with interest.

The testator evidently intended that the legacy of land and slaves to Samuel C. Townsend should be reduced by the amount of twenty thousand dollars, for which the bonds were given, because he says this sum is to constitute a part of the residuary trust fund created in the fourteenth item. This fund is no inconsiderable part of the estate, and is designed for other legatees.

It is manifest that Samuel C. Townsend could, at any time before the final settlement of his testator's estate, acquit himself of liability to pay these bonds, by refusing to act as executor and surrendering the property. It is also evident that within the same time he could, after ceasing to act as executor himself, by paying the compensation due to his successor, avoid accountability for the rents and profits of the property.

An interesting question arises from the destruction of that portion of the legacy which consisted of slaves. The absolute title to the legacy was not to vest in the beneficiary until the final settlement of the testator's estate. The reason therefor, given in the will, is, that the use of the property was to be the compensation of the executor, and, in a certain contingency, the estate, both as to right and use, was to be forfeited. The possession and use, however, were vested on and by the compliance of Samuel C. Townsend with the precedent conditions. If the appellants had it in their power to return all of their property received, it is clear that they could defeat a recovery on the bonds by so doing, and that they could not, without such return. That portion of the property consisting of slaves was lost by their emancipation. On whom must this loss fall? Certainly on those in whom the title and interest to them were vested at the time, and in the proportion of such title and interest. From this proposition, it follows that Samuel C. Townsend, and those claiming under him, must lose the use during the execution of the testator's will; and the estate of the testator must lose all else constituting the absolute title. What must be the effect of these respective losses? Samuel C. Townsend was to receive a legacy of about fifty thousand dollars, reduced by the amount of twenty thousand dollars. The consideration of this was natural love and affection, and his personal execution of the testator's will, or the payment of the compensation of his successor. His representatives may make good this consideration. But the title to a large portion of the property which remained in the estate of Samuel Townsend cannot now be conferred. The consideration for which the bonds were given has failed while yet vested in

Sanders et al., Ex'rs, v. Cabaniss et al., Ex'rs.

the donor. Has it failed entirely, or proportionally? Entirely, if the property lost exceeds twenty thousand dollars in value; if not, in proportion to the diminution.

We come to the conclusion that Samuel Townsend intended to give his nephew a legacy worth not less than the difference between the value of the specific bequest and the amount of the bonds, from the attachment manifested for this particular property in his will, the means he employed to reduce the bequest, his anxiety to have this particular relative to become his executor, the exemption of the property from his debts and any of the expenses of adminstration, and the care he enjoined in behalf of the slaves.

Inasmuch as the compensation to be paid to the successor of Samuel C. Townsend as executor may rightfully be insisted on by either party, we hold that the appellants should account to the appellee for that amount, from the death of Samuel C. to the final settlement of Samuel Townsend's estate. The value of the slaves at the time of their receipt by Samuel C. Townsend must be ascertained. If it be less than twenty thousand dollars, the bonds must be paid to the extent of the difference. If it be greater, they must be cancelled.

It is unnecessary to consider the error assigned respecting the pendency of another suit for the same cause of action. The suits are in the same court, and can be heard together, and the chancellor can impose the costs as justice may require. The questions presented on the report of the register, not already disposed of, may not arise again.

The decree is reversed, and the cause remanded.


NOTE BY THE REPORTER.—At a subsequent day of the term, appellees petitioned for a rehearing, and Messrs. WALKER & BRICKELL filed in support thereof the following argument:

"The most casual reading of the will of the testator of the appellee, will satisfy the court that the primary objects of his bounty were the legatees of " the first class," as he designated them, to whom the "residuary trust fund," the

37

great bulk of his estate, is bequeathed. These were the peculiar and especial objects of his solicitude.

"It is equally manifest that the primary controlling purpose and intent of the testator, in the devise and bequest under consideration, was, in furtherance of his primary purpose to favor the legatees of the first class, that the property, the subject of this devise and bequest, should either pass to, and form part of, 'this residuary trust fund; or, if diverted therefrom, that it should yield to that fund twenty thousand dollars, and an exemption from all diminution by reason of the compensation of one of the executors of his will, There is no alternative or event prescribed in which this devise and bequest can be operative to pass this property from that fund, other than the one we have expressed. If that alternative or event does not occur, the mandate of the will is imperative; the property must be sold, and the proceeds of sale pass to the " residuary trust fund." We do not know how to make this clearer than by stating it. Is there any event or contingency prescribed by the will, whereby Samuel C. Townsend can have the subject of this devise, or any part of it, without paying the twenty thousand dollars and the compensation of one of the executors ? If he does not pay twenty thousand dollars and the compensation of one executor, must not the property be sold and pass into the " residuary trust fund "? The proposition that the primary controlling intent of the testator is as we have stated, is self-evident. The primary intent was not, as is indicated in the opinion of the court, to give to Samuel C. Townsend a legacy and devise of the value of fifty thousand dollars, (or of any other value,) less twenty thousand dollars; but to give him nothing until the property had yielded twenty thousand dollars to the " residuary trust fund," and compensated one executor for his services. This is evident, because he can never take the property until this result is accomplished.

"Samuel C. Townsend had the right of election to accept or reject the bequest and devise thus charged, and for all the purposes of this argument, we may concede that his election to take would not be final and conclusive until the settlement of testator's estate; when, or prior thereto, hav-

ing once taken the property, he could, having in the mean time compensated one of the executors, have surrendered the property, claimed reimbursement for such compensation, and for any payments made of the twenty thousand dollars, and accounted for the rents ond profits while in possession.   It is manifest, however, that if he elected to take, he must take the devise as a whole, not in part; he must take it *cum onere*, he can not take it so far as beneficial to him, and repudiate it so far as the testator intended it to be beneficial to others.   So, if in the exercise of his election, he refuses to keep the property subject to its charge, he must refuse *in toto ;* he can not claim any diminution from, or exemption of, the charges, because of the loss or destruction of any part of the property.   For the will charges the whole property, not any part of it; makes no apportionment of such charges ; and if he were permitted to elect to keep such of the property as had not been lost or destroyed, and claim an exemption from the charges because of such loss or destruction, he would make, not execute, a will for the testator.   The opinion of the court holds that Samuel C. is entitled to a reduction from the bonds of the value of the slaves emancipated, because the title of such slaves was, when the emancipation occurred, vested in the personal representatives of Samuel Townsend, deceased, and could not, as contemplated by the will, ever vest in the said Samuel C.   Now this may or may not be a good reason to induce the personal representatives of Samuel C. to exercise the right, given by the will, of retracting his election to take the devise and bequest, of claiming compensation for his services as executor, surrendering the property, accounting for its rents and profits, and claiming a cancellation of his bond.   Or it may or may not be, if the real estate does not pay the bond, an answer to any demand for the surplus.   But we submit, it is not an answer to a suit seeking to enforce the charges the testator has imposed on the property he holds and claims to hold.   If the emancipation justifies this claim, the death of the slaves, or the loss by a superior title, would have equally justified it.   If the loss of the whole justifies it, the loss of a part would equally justify it *pro tanto*.   The care

with which the testator provides that this particular property shall either yield twenty thousand dollars to, or never be diverted from, the "residuary trust fund," forbids the adoption of a construction of this devise which leaves the accomplishment of one or the other of these results dependent on any such events.

"The maxim on which the opinion of the court is based we recognize to its fullest extent. That maxim is *res perit domino,* or "a thing lost to its owner." Let us see its just application to the case we are considering. The devisee had a conditional estate, the right, on performance of that condition, to enlarge that estate into an absolute unqualified estate. The testator had the jurisdiction or property which was the right, if the condition was not performed, of resuming or being reinvested with his original estate, as if he had never devised or alienated it. Unquestionably, this was the condition of devisor and devisee. Now the maxim applies to each in this condition. The loss by operation of law is, to the devisee, of his right to enlarge his estate from a conditional into an absolute, unqualified estate. The loss, to the devisor, is the right to exercise his jurisdiction over, and restore so far as the thing lost is concerned, his original title. This is the only proper and just application of the maxim, so far as this case authorizes its application. The devisee can not, by performance of the condition, so far as the thing lost is involved, enlarge his *qualified* into an *absolute* estate. The devisor can not, if the devisee fails to perform the condition, be restored to his original title to the thing lost.

"This is all true of the thing lost; but this certainly affords no reason for withdrawing from the devisor his jurisdiction over, and right to resume and be reinvested with, his title to, a thing which has not perished, which still exists, and the title to which he has parted with only in the event the conditions are performed. Nor can it convert the estate of the devisee, conditional in the terms of its creation, into an absolute estate in the thing which has not perished. That would be to strip the devisor of the estate he had, not only over the thing lost, but over the thing existing, and to convert the estate of the devisee, conditional in

its creation, into an absolute estate over the thing existing, because he lost his conditional estate in the thing perishing.

" If the title to the slaves remained in Samuel Townsend, never having passed to Samuel C. Townsend, and the loss of the slaves, because of emancipation, falls upon him who has the title, where, let us ask, is the title to the real estate devised? The real and personal estate are devised in the same terms, subject to the same limitations and reservations. If the title to the slaves had not passed from Samuel Townsend, the title to the real estate has not passed. If the title to the slaves had not been by law abolished, that title could not have been divested, until the happening of the contingency prescribed in the will; and so the title to the real estate, unaffected by any legal enactment since the testator's death, can never pass except upon the happening of the contingency prescribed. And yet, the result of the opinion and judgment of the court is to divest Samuel Townsend of the title to this real estate, upon a contingency he has not prescribed, and to declare that the contingency on whicn he makes such divestiture dependent shall never happen, and to make him lose both land and slaves, because he has the title thereto,—a result against which he was studiously guarding himself by retaining the title.

" Undue stress, it occurs to us, is, by the opinion of the court, laid upon the declaration of the will, that the " *absolute title* " to the property should not vest in the devisee, until the final settlement and distribution of the testator's estate. This declaration is no more than construing the will according to law would have been the result without it. An " *absolute title* " is not to vest, but its correlative, a conditional title, is to vest; a title which is either to enlarge into an absolute title, or to be defeated *ab initio*. This, not from any consideration of favor to the devisee, but from the jealous purpose of compelling a compliance with the terms and conditions on which the property is devised and bequeathed, that the primary objects of the testator's bounty shall not, in any way, lose any part of what the testator intended to secure them. That a conditional title, not a mere usufructuary interest, was intended

to pass to the devisee, but a title capable of alienation and incumbrance was intended to pass ; a title, the divestiture or enlargement of which was dependent on no other event than the act of the devisee, is manifest, when we consider that, by the express terms of the will, if the devisee refused to qualify as executor, or having qualified, ceased to act, he or his legal representatives are required to secure the compensation of his successor or substitute by *a lien* on the property—not a lien on any usufructuary interest, or mere use of the property, but on the property itself ; and the property is declared to be bound for the payment of the compensation of any successor of the devisee as executor.

"Surely, the testator, in a will drawn with the care and deliberation exhibited in every line of this, did not fall into the singular absurdity of requiring from Samuel C. *a lien* which would pass no title and afford no security ; for if the title remained, to the extent supposed by the court, in the testator, then there was nothing on which such *lien* could operate, and the title remaining in the testator was paramount to it, and subservient to every purpose the lien was designed to accomplish.

"We submit to the court, that the true theory and construction of the devise and bequest is as we have urged ; that the judgment heretofore rendered is subversive of this construction, and regards Samuel C. Townsend as the favored object of the testator's bounty, overlooking the primary claims of the legatees of the first class, whose interests all the precautions introduced into this particular devise were intended to guard ; that Samuel Townsend's rights were in every respect conditional ; nothing was given him absolutely, and that without performance of these conditions, in violation of every principle of law on which conditional estates depend, and in violation of the express language and the manifest purpose of the testator's will, it is sought, and the result of the former judgment of this court is, to convert his estate in the lands into an absolute estate, freed from the conditions imposed by the testator.

" The only construction of this devise which will render all its terms harmonious and intelligible is, that Samuel C. Townsend was to take the property devised and bequeathed,

subject to a charge of twenty thousand dollars and the compensation of one of the executors; that all the limitations and reservations imposed upon the passing of the title were only designed to secure the enforcement of this charge.

" Nor is it an argument against this construction, that in consequence of the emancipation of slaves, by adopting it, Samuel C. is not benefitted by the devise. His rights and interest are, by the devise, subordinated to this charge. He takes the property thus burthened, and if he is not benefitted, it is a consequence of the testator's will, who had the right to give or withhold. Events occurring subsequently to the death of a testator are never permitted to vary or alter the construction of a will. The will must be read and construed in the light of facts then existing.—*Anderson v. Jackson*, 16 Johns.; *Kirkman v. Mason*, 17 Ala.

" If the courts did not adhere to this rule, but, because of facts subsequently occurring, varied or changed the construction, they would make, not construe, wills."

NOTE BY THE REPORTER.—At the present term, the following response was made by—

B. F. SAFFOLD, J.—The application for a rehearing has been accompanied by written arguments, able and exhaustive of the subject. But we are not convinced that our interpretation of the twenty-eighth item of the will is erroneous. The difficulty lies, not in any failure of Samuel C. Townsend or his representatives to comply with the conditions annexed to the devise, nor in the discovery of the testator's intention. Circumstances have occurred since the testator's death, and while the title to the property yet remained in his estate, which renders the obligation of the estate to the devisee impossible of discharge, while the conditions on which it rested have been or may yet be performed. If this were a sale of the property on the terms required of Samuel C. Townsend, equity could not decree a specific performance, because a large portion of the consideration has perished; nor would it decree a rescission, because the parties could not be put in *statu quo* in this, particularly, that the legatees would be chargeable with the rents and profits of about fifty thousand dollars

worth of property, and the interest thereon, for the time
he had it in possession, without receiving any return for
the two thousand dollars a year which he may have paid
to his successor and without any default on his part. The
court would rather, in the exercise of its flexible powers,
allow an abatement out of the purchase-money or compen-
sation, for any deficiency in the title or quantity of the
estate.

The payment of twenty thousand dollars, required to be
secured before Samuel C. Townsend should have the pos-
session of the property, does not seem to be so much a
condition on which he was to have the bequest, as a dimi-
nution of the estate. It was not so much refusal or fail-
ure to comply with this term, which was to work a forfeit-
ure of the estate, because compliance could have been en-
forced. The purpose most prominently manifested by the
testator, in making this bequest, was to have Samuel C. to
act as executor. But recognizing that circumstances might
render it impossible for him to do so, he takes no advan-
tage of such necessity, and allows him to employ a suc-
cessor.

Events have made it impossible to execute the will of
the testator. There has been such part performance as to
prevent a retrogression. In this situation of the parties,
what should the court do? Clearly, the loss of property
must fall upon the owner. Samuel C. Townsend received
the property that its use might be his compensation as
executor, or pay for that of his successor. He must lose
that use. The title to the property existing in the slaves
was in the estate. Its loss must be borne by the estate.
It can not be said that in the twenty-eighth item a greater
intention is manifested to give twenty thousand dollars to
the residuary legatees, than to give a valuable legacy to
the nephew. The latter was to render important services
in consideration of the bequest to him which the law re-
gards as a sufficient equivalent. A partial performance has
been effected, and his representative is ready and able to
execute the remainder. But the estate cannot comply
with its obligation. The residuary legatees are mere ben-

eficiaries. Justice must precede generosity, and the claims on the latter are at least equal. We think there is no error in our decision.

The rehearing is denied.